UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MOLLY M. POGORZELSKI, on behalf
of herself and all others similarly situated,

        Plaintiff,

   v.                                         Case No. 16-C-1330

PATENAUDE & FELIX APC and
JOHN AND JANE DOES,

        Defendants.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff Molly M. Pogorzelski brought this suit against defendants Patenaude & Felix APC and John and Jane Does for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. Presently before the court is Patenaude's motion to dismiss Pogorzelski's First Amended Class Action Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Patenaude asserts Pogorzelski lacks standing to sue because she has failed to allege that she has suffered a concrete injury. For the reasons stated below, Patenaude's motion will be denied.

### BACKGROUND

For purposes of this motion, the court accepts as true all allegations contained in the amended complaint. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002). Pogorzelski is alleged to have incurred and defaulted on a financial obligation to TD Bank, USA, N.A. as a successor in interest to Target National Bank. The creditor of those debts then assigned, placed, or

transferred the debt to Patenaude for collection. Patenaude is a law firm that regularly engages in the business of collecting debts alleged to be due another.

Pogorzelski's allegations under the FDCPA arise from a letter she received from Patenaude on May 10, 2016. The letter indicated Pogorzelski's "debt has been assigned to this firm to initiate collection efforts," and refers to the creditor as the firm's client. (ECF No. 16.) Pogorzelski inferred from the letter that TD Bank hired Patenaude to aggressively collect the debt and ultimately pursue legal action if the debt remained unpaid. She believed the only way to avoid a lawsuit was to call Patenaude and make an immediate payment. Pogorzelski alleges that the letter failed to make clear that Patenaude was not retained by TD Bank to file a lawsuit against her or that Patenaude does not employ any attorneys licensed to practice law in the State of Wisconsin. She contends that Patenaude's collection practices are largely automated and utilize standard form letters.

The letter also stated, "If you wish to avoid further collection activity, please contact us at (866) 606-3290." (*Id.*) Pogorzelski claims this statement is false, deceptive, and misleading because it suggests to an unsophisticated consumer that the only way to prevent further collection activity is to call Patenaude. She contends that this statement overshadows and is inconsistent with the consumer's right to request, in writing, that a debt collector cease further communication. *See* 15 U.S.C. § 16392c(c).

Pogorzelski, on behalf of herself and all others similarly situated, complains that Patenaude violated §§ 1692e, 1692e(3), 1692e(10), and 1692f, and 1692g of the FDCPA. Specifically, Pogorzelski alleges Patenaude denied her the right to certain information due to her under the

2

FDCPA. She seeks statutory damages, attorneys' fees, and costs on behalf of herself and a putative class pursuant to 15 U.S.C. § 1692k. Patenaude challenges Pogorzelski's standing to bring this lawsuit.

**ANALYSIS**

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The "case or controversy" requirement contained in Article III ensures that the federal judicial power is confined to a role consistent with a system of separated powers and limited to cases "which are traditionally thought to be capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 97 (1968). A plaintiff seeking to invoke a federal court's jurisdiction must demonstrate that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citation and internal quotation marks omitted). To establish injury in fact, a plaintiff must show that she suffered "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999). Patenaude argues Pogorzelski lacks Article III standing because she has not alleged that she suffered a concrete injury in fact.

Pogorzelski alleges that she has suffered "informational injury" as a result of Patenaude's failure to provide her with FDCPA-mandated information. To be a concrete injury for the purposes of Article III standing, the injury must actually exist. *Spokeo*, 136 S. Ct. at 1548. In other words, there must be some "appreciable risk of harm" to the plaintiff. *Meyers v. Nicolet Rest. of De Pere,*

3

*LLC*, 843 F.3d 724, 727 (7th Cir. 2016). Nevertheless, "concrete" is not necessarily synonymous with "tangible." *Spokeo*, 136 S. Ct. at 1548. Though difficult to recognize, intangible injuries may be concrete. *Id.* Courts look to history and the judgment of Congress to determine whether an intangible harm constitutes an injury in fact. *Id.*

Historical practice allows a court to consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Based on history, a court may find that the risk of harm is enough to satisfy concreteness. *Id.* at 1549. For instance, the Supreme Court in *Spokeo* recognized that common-law defamation cases have allowed plaintiffs to initiate a lawsuit even though their actual damages are difficult to prove. *Id.* (citing Restatement (First) of Torts §§ 569–70 (libel and slander *per se*)).

In addition, Congress' judgment is an "instructive and important" source of guidance because Congress is "well positioned to identify intangible harms that meet minimum Article III requirements" and "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (citations omitted). While Congress may elevate "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992), the Supreme Court has warned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549; *see also Raines*, 521 U.S. at 820 n.3 ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not

otherwise have standing."). In short, Article III standing requires that a plaintiff establish that she suffered a concrete injury, even in the context of a statutory violation. *Spokeo*, 136 S. Ct. at 1549. That is not to say that a real risk of harm caused by a statutory violation is insufficient to constitute a concrete injury in fact, but a plaintiff must allege more than "a bare procedural violation, divorced from any concrete harm" to satisfy Article III standing requirements. *Id.*

Under these principles, Pogorzelski has alleged a concrete injury in fact. Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It noted collection abuse takes many forms, "including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95–382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. Congress concluded these abusive practices contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy" and that the existing laws and procedures for redressing injuries caused by a debt collector's abusive practices were inadequate to protect consumers. § 1692(a)–(b). Congress found that the "vast majority of consumers who obtain credit fully intend to repay their debts," thus, all consumers, even those who have mismanaged their financial affairs resulting in default, "deserve the right to be treated in a reasonable and civil manner." S. Rep. No. 95–382, 95 Cong., 1st Sess. 3 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697. To that end, the FDCPA prohibits a debt collector from using "false, deceptive, or misleading representation or means in connection with the collection of any debt" as well as "unfair or

5

unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e, 1692f. The FDCPA creates a private right of action for consumers who receive communications that violate the Act so that the may vindicate their rights. *See* 15 U.S.C. § 1692k. The FDCPA in essence "enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

In short, the FDCPA was intended to deter debt collectors, like Patenaude, from making false representations to unsophisticated consumers, like Pogorzelski. Patenaude's alleged violation of Pogorzelski's right to receive certain required information under the FDCPA is not hypothetical or uncertain. Pogorzelski had a right to receive this information from Patenaude, and she alleges she did not receive it. Although her alleged injury may not have resulted in tangible economic or physical harm, the informational injury Pogorzelski alleges is more than a mere procedural violation. A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against. Pogorzelski has adequately alleged she received information that is materially misleading to an unsophisticated consumer. This satisfies the concrete injury in fact requirement of Article III.

None of the authority cited by Patenaude suggests otherwise. The Supreme Court most recently addressed the requirements of standing in *Spokeo v. Robins*, in which the court analyzed whether Robins had standing to assert a claim arising under the Fair Credit Reporting Act (FCRA). 136 S. Ct. 1540 (2016). Robins filed a class-action complaint against Spokeo, alleging that it willfully failed to comply with FCRA requirements by publishing inaccurate information about him.

*Id.* at 1544. He asserted that his Spokeo profile improperly indicated "that he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree," though he did not allege that this false information was actually used to his detriment. *Id.* at 1544, 1546. The Court began its analysis by reviewing the general principles of Article III standing, specifically, the injury-in-fact requirement. It noted that while Congress has identified and elevated certain intangible harms to constitute concrete injuries, "a bare procedural violation, divorced from any concrete harm, [is insufficient to] satisfy the injury-in-fact requirement." *Id.* at 1549. Applying these standards, the Court recognized that in passing the FCRA, Congress "plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id.* at 1550. Yet, the Court concluded Robins could not satisfy the demands of Article III by alleging a bare procedural violation of the statute that did not result in harm or present any material risk of harm. *Id.* Still, it is important to note that the Court did not hold the plaintiff lacked standing; instead, the Court remanded the case to the Ninth Circuit to determine whether Robins' allegations of a procedural violation "entails a degree of risk" sufficient to meet the concreteness requirement. *Id.*

To be sure, an argument can be made that the Supreme Court's decision in *Spokeo* redefined the injury-in-fact requirement by requiring a complaint to allege that a statutory violation caused a "material risk of harm" before a plaintiff may bring a suit. *See Dreher v. Experian Information Solutions*, 856 F.3d 337 (4th Cir. 2017) (finding that an informational injury is not sufficient to satisfy the injury-in-fact requirement to bring a lawsuit for an FCRA violation). But numerous other courts, including courts in this circuit and from around the country, have rejected *Spokeo*-based standing challenges in the context of FDCPA violations. *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. 2016) ("Church has alleged that the FDCPA governs the letter at

issue, and thus, alleges she had a right to receive the FDCPA-required disclosures. Thus, Church has sufficiently alleged that she has sustained a concrete—*i.e.*, "real"—injury because she did not receive the allegedly required disclosures."); *Haddad v. Midland Funding, LLC*, No. 16 C 3942, 2017 WL 1550187 (N.D. Ill. May 1, 2017) ("[T]he judgment of Congress, the guidance of history, and *Havens Realty* compel the conclusion that the harm of receiving misleading information in violation a statutory right to truthful information is concrete."); *Long v. Fenton & McGarvey Law Firm P.S.G.*, No. 1:15-cv-01924, 2016 WL 7179367, *3 (S.D. Ind. Dec. 9, 2016) ("Plaintiff alleges that she received deficient and misleading information regarding her debts, which is a "harm defined and made cognizable" by the FDCPA."); *Saenz v. Buckeye Check Cashing of Ill.*, No. 16–cv–06052, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) ("Congress gave consumers a legally protected interest in certain information about debts, and made the deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury"); *Guerrero v. GC Servs. Ltd. P'ship*, No. CV 15-7449 (DRH) (AKT), 2017 WL 1133358, at *11 (E.D.N.Y. Mar. 23, 2017) ("This Court agrees with the prevailing weight of authority and, as such, similarly finds that 15 U.S.C. §§ 1692e and 1692g—the statutory sections at issue in the present motion—confer certain substantive rights, consisting of the right "to receive required disclosures in communications governed by the FDCPA" . . . and the right to "be free from abusive debt communications." (internal citations omitted)); *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, No. PX-16-1053, 2016 WL 6803775, at *8 (D. Md. Nov. 17, 2016) (finding that pleading an informational injury is sufficient proof of concrete injury); *Munoz v. Cal. Bus. Bureau, Inc.*, No. 1:15-cv-01345-BAM, 2016 WL 6517655, at *5 (E.D. Cal. Nov. 1, 2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves

8

constitute a concrete injury."). I find the reasoning of these cases and the weight of this authority persuasive.

The Supreme Court did not categorically preclude individuals from asserting that a defendant violated statutorily-mandated procedures. Instead, it clarified that only certain violations may create a concrete injury necessary for standing. Indeed, there is a meaningful distinction between a violation of a specific statutory interest recognized by Congress, such as the right to truthful information in debt collection communications, and in a procedural infraction that may not materially harm that interest, such as an incorrect zip code. *See Spokeo*, 136 S. Ct. at 1550.

Patenaude further relies on two Seventh Circuit cases which have found that statutory violations do not create concrete injuries in fact in light of *Spokeo*: *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), and *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016). However, these cases are distinguishable from the case at hand. In *Gubala*, the plaintiff filed a class action lawsuit against a cable company, alleging that the company violated the Cable Communications Policy Act (CCPA) when he discovered the company had failed to destroy his personally identifiable information nearly ten years after he cancelled his cable subscription. 846 F.3d at 910. He asserted that "the retention of the information, on its own, has somehow violated a privacy right or entailed a financial loss." *Id.* The court recognized that there was a risk of harm but found that Gubala had "failed to show . . . even a remote probability" that Time Warner's conduct was harmful to him. *Id.* at 912. The court held that Gubala lacked standing to bring his suit, due to "the absence of allegation let alone evidence of any concrete injury inflicted or likely to be inflicted on the plaintiff as a consequence of Time Warner's continued retention of his personal information." *Id.* at 913.

9

In *Meyers*, the plaintiff brought a putative class action, alleging that the defendant violated the Fair and Accurate Credit Transactions Act (FACTA) by giving the plaintiff a receipt that did not truncate his credit card's expiration date. 843 F.3d at 725. Meyers only sought statutory damages for this violation and did not allege a harm. The court concluded Meyers' allegations were insufficient to satisfy the injury-in-fact requirement for Article III standing because he did not allege that he suffered any harm or that the violation created any appreciable risk of harm. *Id.* at 727. Although Congress enacted FACTA to curb the increasing threat of identity theft, the court found that the violation did not create any appreciable risk of harm because "Meyers discovered the violation immediately and nobody else ever saw the non-compliant receipt." *Id.* The court also noted that Congress declared that the failure to truncate a card's expiration date, without more, does not heighten the risk of identity theft and sought to "limit FACTA lawsuits to consumers 'suffering actual harm.'" *Id.* (citing Pub. L. 110–241, § 2(a)(6)).

While the provisions at issue in *Gubala* and *Meyers* imposed a host of technical, procedural requirements, the purpose of the FDCPA is to protect consumers from certain harmful debt collection practices and create a private right of action for consumers, namely, the right to be free from "false, deceptive or misleading" information. *See* 15 U.S.C. § 1692e. Here, Patenaude's letter to Pogorzelski containing false information is precisely the harm Congress "sought to curb" in enacting the FDCPA. *See Spokeo*, 136 S. Ct. at 1550. Therefore, Pogorzelski need not allege any additional harm beyond the statutory violation identified by Congress. *Id.* at 1549. The court finds that Pogorzelski has pled a concrete injury in fact. Accordingly, Pogorzelski has standing to sue in this case.

## CONCLUSION

For the foregoing reasons, Patenaude's motion to dismiss (ECF No. 25) is **DENIED**. Pogorzelski's recently filed motion for leave to respond to new matter relied upon in Patenaude's reply brief (ECF No. 29) is **DENIED as moot**.

**SO ORDERED** this  12th  day of June, 2017.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court